GORLICK, KRAVITZ & LISTHAUS, P.C.
Bruce L. Listhaus (BL2381)
Brett D. Sherman (BS4917)
17 State Street, 4th Floor
New York, New York 10004
Tel. (212) 269-2500
Fax. (212) 269-2540
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MASON TENDERS DISTRICT COUNCIL WELFARE
FUND, PENSION FUND, ANNUITY FUND, TRAINING
FUND, HEALTH AND SAFETY FUND, and DOMINICK
GIAMMONA, as FUNDS' CONTRIBUTIONS/DEFICIENCY
MANAGER,

           Plaintiffs,

   -against-

KAFKA CONSTRUCTION, INC.,

           Defendant.
---------------------------------------------------------------X

COMPLAINT

Plaintiffs, Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety Fund ("Funds") and Dominick Giammona, in his fiduciary capacity as Funds' Contributions/Deficiency Manager ("Giammona") (collectively, "Plaintiffs"), by and through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint, respectfully allege as follows:

### NATURE OF THE ACTION AND JURISDICTION

1.    Plaintiffs bring this civil action for breach of contract, injunctive relief, and other equitable relief under §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132[a][3] and 1145), and § 301 of the Labor

Management Relations Act of 1947 ("Taft-Hartley Act") (29 U.S.C. § 185), New York common law, and New York principles of equitable relief.

2. This Complaint alleges that, by failing, refusing, or neglecting to comply with specific statutory and collective bargaining obligations, Defendant Kafka Construction, Inc. ("Kafka" or "Defendant") violated one or more contracts between an employer and a labor organization, as defined under the Taft-Hartley Act, the Funds' respective trust agreements, and ERISA.

3. Jurisdiction of this Court is invoked under the following statutes:

   a. ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132[e][1] and [f]);

   b. Taft-Hartley Act § 301 (29 U.S.C. § 185);

   c. 28 U.S.C. § 1331 (federal question);

   d. 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

   e. 28 U.S.C. § 1367 (supplemental jurisdiction).

4. Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132[e][2]) and Taft-Hartley Act § 301 (29 U.S.C. § 185[c]) because the Funds are administered in this district and the contractual breaches occurred within this district. Pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132[e][2]), service of process may be made on Kafka in any district in which Kafka may be found.

## STATEMENT OF FACTS

### The Parties

5. The Funds are jointly-administered, multi-employer, labor-management trust

funds established and maintained pursuant to various collective bargaining agreements in accordance with Taft-Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. §§ 186[c][5] and [c][6]).

6. The Funds are also employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002[1], [2], [3] and 1132[d][1]), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002[37] and 1145). The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements between such employers and the Mason Tenders District Council of Greater New York ("Union"), and are third party beneficiaries of such collective bargaining agreements. The Funds maintain their offices and are administered at 520 Eighth Avenue, Suite 600, New York, New York 10018.

7. The Funds are also the duly authorized collection agent for the Union and the Mason Tenders District Council Political Action Committee ("PAC").

8. Plaintiff Giammona is the Funds' Contributions/Deficiency Manager and is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002[21] and 1132). Giammona brings this action in his fiduciary capacity.

9. Non-party Union is a labor organization within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185). It represents employees in an industry affecting commerce, as defined by Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002[4]).

10. Defendant Kafka is a for-profit domestic corporation doing business in the State of New York and is an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002[5] and 1145). Kafka is also an employer in an industry affecting commerce within the

meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185). Kafka's principal office is located at 38-30 28th Street, Long Island City, New York 11101.

## BACKGROUND

11. At all times relevant to this Complaint, Kafka was a member of the Building Contractors Association, Inc. ("Association"). The Association was and is the exclusive bargaining agent for all its members for the purposes of collective bargaining with the Union.

12. The Association entered into a collective bargaining agreement with the Union for the period of July 1, 2010 through June 30, 2014 ("2010-2014 Agreement"). The 2010-2014 Agreement was extended to the period of July 1, 2014 through June 30, 2018, by a Memorandum of Understanding ("2014-2018 MOU"; collectively, the 2010-2014 Agreement and the 2014-2018 MOU are hereinafter referred to as the "BCA Agreement").

13. Among other things, the BCA Agreement requires Kafka to: (i) make fringe benefit contributions to the Funds; (ii) submit to the Funds reports detailing the number of hours that Kafka employees performed work within the trade and geographical jurisdictions of the Union ("Covered Work"); (iii) deduct dues checkoffs and PAC contributions from the wages of employees who performed Covered Work and authorized such deductions in writing; (iv) remit all deducted dues checkoffs and PAC contributions to the Union; (v) permit the Funds and/or their designated representatives to audit Kafka's books and records; (vi) apply interest on delinquent fringe benefit contributions; and (vii) impose the imputed costs of audits upon employers found to be substantially delinquent in their fringe benefit contributions.

14. The Funds' auditors performed an audit of Kafka's books and records ("Audit") for the time period of March 28, 2015 through March 25, 2016 ("Audit Period").

15. The Audit revealed that there were at least 20,146.5 hours of Covered Work performed by Kafka employees during the Audit Period for which Kafka failed to comply with its obligations under the BCA Agreement to make fringe benefit contributions and remit deducted dues checkoffs and PAC contributions.

16. Upon information and belief, Kafka continued to perform Covered Work after the Audit Period and continues to perform Covered Work.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT CLAIM AGAINST KAFKA FOR DELINQUENT FRINGE BENEFIT CONTRIBUTIONS DURING THE AUDIT PERIOD)

17. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 16 of this Complaint, as if fully set forth herein.

18. Pursuant to the BCA Agreement, Kafka must make fringe benefit contributions to the Funds, in the amounts set forth in Article VI of the BCA Agreement, for each hour of Covered Work.

19. Kafka failed to make contractually mandated fringe benefit contributions for approximately 20,146.5 hours of Covered Work performed by its individual employees during the Audit Period, resulting in a fringe benefit contribution delinquency of $562,810.93.

20. Kafka's failure to make required fringe benefit contributions to the Funds during the Audit Period is a breach of the BCA Agreement.

21. BCA Agreement, Article VI § 18(e), requires employers found delinquent in their payment of fringe benefits to pay additional interest on the unpaid amounts from the date the fringe benefit contributions were due, until the date they are paid, at the rate prescribed under

5

Section 6621 of Title 26 of the United States Code.

22. Pursuant to the BCA Agreement, Article VI § 18(f), should the Court grant judgment in favor of the Funds, Kafka must pay to the Funds, in accordance with the judgment of the Court: (i) the unpaid contributions; (ii) interest on unpaid and late paid contributions determined by using the rate prescribed under Section 6621 of Title 26 of the United States Code; (iii) interest on the unpaid contributions as and for liquidated damages; and (iv) the Funds' reasonable attorneys' fees and costs of the action.

23. The Funds are third-party beneficiaries of the BCA Agreement with standing to assert a breach of contract claim against Kafka.

24. Thus, Kafka is liable to the Funds under the BCA Agreement for failing to make required fringe benefit contributions for Covered Work performed by Kafka employees during the Audit Period in the total amount of $562,810.93, plus interest at the rate set by the BCA Agreement until such date as the delinquent contributions are paid, liquidated damages in an amount equal to the amount of interest, and reasonable costs and attorneys' fees.

## SECOND CAUSE OF ACTION
### (CLAIM FOR BREACH OF ERISA OBLIGATIONS AGAINST KAFKA)

25. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 24 of this Complaint, as if fully set forth herein.

26. ERISA § 515 (29 U.S.C. § 1145) requires employers to make fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

27. Kafka is an employer under ERISA and is bound by the BCA Agreement.

28. During the Audit Period, Kafka failed to make fringe benefit contributions to the

Funds required under the BCA Agreement. Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

29. Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA § 502(g)(2) (29 U.S.C. § 1132[g][2]) to award the Funds: (i) all unpaid fringe benefit contributions; (ii) statutory damages and interest on the unpaid and/or untimely-paid principal, each computed at the rate provided for under the fund's plan or, if no rate is so provided, at the rate stated in United States Internal Revenue Code § 6621 (26 U.S.C. § 6621); and (iii) reasonable attorneys' fees and costs incurred in prosecuting the action.

30. Here, the BCA Agreement provides for interest on delinquent fringe benefit contributions at the rate prescribed in United States Internal Revenue Code § 6621 (26 U.S.C. § 6621), plus liquidated damages equal to the full amount of interest, and reasonable costs and attorneys' fees. *See* BCA Agreement, Article VI, §§ 18(e)-(f). Together §§ 18(e)-(f) provide, in relevant part:

> If after an audit of its books and records the Employer is found to be delinquent in the payment of fringe benefit contributions to the Trust Funds . . . the Employer shall pay, in addition to the delinquent fringe benefit contributions, interest on the unpaid amounts from the due date until the date of payment at the rate prescribed under section 6621 of Title 26 of the United States Code. In the event the Trust Funds . . . bring an action to recover the interest on delinquent fringe benefit contributions, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action . . . In the event that formal proceedings are instituted before a court of competent jurisdiction . . . to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay to such Fund . . . interest on the unpaid contributions as and for liquidated damages [and] such other legal or equitable relief as the court deems appropriate.

7

*Id.*

31. Kafka currently owes $562,810.93 in delinquent fringe benefit contributions due to the Funds for Covered Work performed by its employees during the Audit Period. Accordingly, Kafka is liable to the Funds under ERISA § 502 (29 U.S.C. § 1132) for all unpaid fringe benefit contributions for the Audit Period, plus statutory damages, interest on the unpaid and/or untimely-paid principal, and reasonable attorneys' fees and costs incurred in this action.

### THIRD CAUSE OF ACTION
### (CLAIM FOR BREACH OF CONTRACT AGAINST KAFKA FOR FAILURE TO REMIT DUES CHECKOFFS AND PAC CONTRIBUTIONS DURING THE AUDIT PERIOD)

32. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 31, as if fully set forth herein.

33. The BCA Agreement requires Kafka to (i) deduct dues checkoffs and PAC contributions from the wages of employees who performed Covered Work and authorized deductions of dues checkoffs and PAC contributions in writing, and (ii) remit all deducted dues checkoffs and PAC contributions to the Union. *See* BCA Agreement, Article VI, §§ 3 and 11.

34. During the Audit Period, Kafka failed to deduct and/or remit $42,648.84 from the wages of Kafka employees who performed Covered Work and gave written authorization for deductions of dues checkoffs and PAC contributions from their wages.

35. Despite the fact that the Funds have duly demanded all deducted dues checkoffs and PAC contributions for the Audit Period, Kafka has not remitted any such dues checkoffs and PAC contributions. Accordingly, the Union has been damaged in the total amount of $42,648.84.

36. Kafka's failures to remit deducted dues checkoffs and PAC contributions from the Audit Period is a breach of the BCA Agreement.

37. The Funds are entitled to prejudgment interest on delinquent dues checkoffs and PAC contributions under New York Civil Practice Law and Rules ("CPLR") § 5001.

38. The Funds are third-party beneficiaries of the BCA Agreement with standing to assert a breach of contract claim against Kafka.

39. Thus, Kafka is liable under the BCA Agreement for undeducted and/or unremitted deducted dues checkoffs and PAC contributions during the Audit Period in the total amount of $42,648.84, plus interest from the dates that remittance of dues checkoffs and PAC contributions were due until the dates that these dues checkoffs and PAC contributions are paid, at the New York State statutory rate of nine percent (9%) per year pursuant to CPLR §§ 5001 and 5004.

### FOURTH CAUSE OF ACTION
### (CLAIM UNDER THE BCA AGREEMENT AND ERISA AGAINST KAFKA FOR COURT COSTS AND ATTORNEYS' FEES)

40. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

41. BCA Agreement, Article VI, §§ 17(e-f) provide for reasonable attorneys' fees and costs of the action should the Funds prevail in an action to recover delinquent fringe benefit contributions. *See* BCA Agreement, Article VI, §§ 17(e-f).

42. Should the Court enter judgment in this action against Kafka, the BCA §requires Kafka to pay the reasonable costs and attorneys' fees incurred by the Funds in bringing this action.

9

43. ERISA § 502(g) also provides for mandatory recovery of attorneys' fees in actions seeking the recovery of delinquent contributions. *See* 29 U.S.C. § 1132(g).

44. In this action, the Funds are pursuing, among other things, $562,810.93 in total delinquent fringe benefit contributions for the Audit Period, which the Funds are entitled to recover from Kafka under the BCA Agreement and ERISA. Thus, Kafka is also liable to the Funds for their reasonable costs and attorneys' fees incurred in bringing and prosecuting this action.

## FIFTH CAUSE OF ACTION
## (BREACH OF CONTRACT CLAIM
## AGAINST KAFKA FOR AUDIT COSTS)

45. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 44 of this Complaint, as if fully set forth herein.

46. The BCA Agreement requires Kafka to pay the imputed cost of the Audit, if the Audit determined that Kafka is substantially delinquent in making fringe benefit contributions to the Funds. *See* BCA Agreement, Article VI, § 18(c). The BCA Agreement provides, in relevant part:

> If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds . . . the Employer shall bear the imputed cost of the audit as set forth below:

$$\frac{\text{total audited deficiency}}{150} \times \text{number of months audited} = \text{imputed cost of audit}$$

> Substantially delinquent is defined as any deficiency in the payment of fringe benefit contributions to the Trust Funds . . . in excess of 10% of the fringe benefit contributions paid to the Trust Funds . . . during the period that is the subject of the audit. In the

10

> event the Trust Funds . . . bring an action to recover the imputed costs of the audit, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

*Id.*

47. Kafka made less than ninety percent (90%) of the required fringe benefit contributions to the Funds during the Audit Period. Thus, Kafka is substantially delinquent in its payment obligations under the BCA Agreement.

48. Following the contractual formula for calculating imputed audit cost, the $562,810.93 audited deficiency divided by 150 is $3,752.07. This quotient multiplied by the 13 months of the Audit results in an imputed Audit cost of $48,776.95.

49. Although the Funds have duly demanded the imputed cost of the Audit from Kafka, and the BCA Agreement expressly requires Kafka to pay such imputed cost to the Funds, Kafka has not paid the imputed audit cost.

50. Kafka's failure to pay the imputed audit cost to the Funds is a breach of the BCA Agreement.

51. BCA Agreement, Article VI, § 18(c) requires Kafka to pay the reasonable costs and attorneys' fees incurred by the Funds in an action to recover the imputed costs of an audit.

52. Accordingly, Kafka is liable to the Funds for the imputed Audit cost of $48,776.95, plus reasonable attorneys' fees and costs incurred in bringing the action.

### SIXTH CAUSE OF ACTION
### (BREACH OF CONTRACT CLAIM AGAINST KAFKA
### FOR FAILURE TO POST AND MAINTAIN A BOND)

53. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 52 of this Complaint, as if fully set forth herein.

54. The BCA Agreement requires Kafka to post and maintain a bond to guarantee payment of all fringe benefit contributions to the Funds. *See* BCA Agreement, Article VI, § 15. If, following an audit of Kafka's book and records, there exists a substantial delinquency, the BCA Agreement, Article VI, § 15 requires that Kafka post a bond equal to the greater of double the audited delinquencies or a sum up to a maximum of $150,000 based upon the "Highest Number Hours Mason Tenders Employed in any 12-month period." *Id.*

55. The Audit revealed that Kafka is substantially delinquent in its payment of fringe benefit contributions to the Funds.

56. BCA Agreement, Article VI, § 15 requires that Kafka post a bond of at least $1,125,621.86, which is double the amount of the audited delinquency.

57. Upon information and belief, Kafka has not posted, and does not currently maintain a bond to guarantee payment of all fringe benefit contributions to the Funds.

58. Kafka's failure to post and maintain such a bond is a breach of the BCA Agreement.

59. The Funds are third-party beneficiaries of the BCA Agreement with standing to assert a breach of contract claim against Kafka for failure to post and maintain a bond.

60. Accordingly, Kafka is obligated to post and maintain a bond of at least $1,125,621.86 to guarantee payment of all fringe benefit contributions to the Funds.

### SEVENTH CAUSE OF ACTION
### (DEMAND FOR AN ORDER DIRECTING
### KAFKA TO PERMIT AN AUDIT OF ITS BOOKS AND RECORDS)

61. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 60 of this Complaint, as if fully set forth herein.

62. BCA Agreement, Article VI, § 18 (a) requires Kafka make its books and records available at all reasonable times for inspection and audit by the accountants or other representatives of the Funds, including, without limitation, all payroll sheets, W-2 forms, New York State employment reports, insurance company reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of worker's compensation coverage, and any other items concerning payroll(s).

63. Pursuant to the BCA Agreement, Plaintiffs hereby demand an order directing Kafka to permit and cooperate with the Funds and/or their designated representatives in the conduct of an audit of Kafka's books and records for the period of March 26, 2016 through the present.

## EIGHTH CAUSE OF ACTION
### (CLAIM FOR FRINGE BENEFIT CONTRIBUTIONS, DUES CHECKOFFS, PAC CONTRIBUTIONS, AND DAMAGES FOUND PURSUANT TO AN AUDIT OF KAFKA)

64. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

65. BCA Agreement, Article VI, §18(e) requires Kafka to pay all delinquent fringe benefits contributions, dues checkoffs, and PAC contributions found due and owing pursuant to an audit of its books and records.

66. BCA Agreement, Article VI, §18(e) also requires Kafka to pay interest on the unpaid fringe benefit contributions from the date due, until the date of payment at the rate prescribed under Section 6621 of Title 26 of the United States Code.

67. BCA Agreement, Article VI, §§ 3 and 11 require Kafka to deduct dues checkoffs and PAC contributions from the wages paid to Kafka employees performing Covered Work who authorize such deductions in writing, and to remit said dues checkoffs and PAC contributions.

68. Kafka must also pay interest on all unremitted and/or undeducted dues checkoffs and PAC contributions found due and owing pursuant to an audit of Kafka's books and records for the period of March 26, 2016 through the present, at the rate set by CPLR § 5004.

69. Accordingly, Kafka is liable to the Funds, as duly authorized collections agent, for all unpaid fringe benefit contributions, dues checkoffs, and PAC contributions, and interest on such amounts found due and owing pursuant to an audit of Kafka's books and records for the period of March 26, 2016 through the present.

## NINTH CAUSE OF ACTION
### (CLAIM FOR INJUNCTIVE RELIEF AGAINST KAFKA UNDER THE BCA AGREEMENT)

70. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 69 of this Complaint, as if fully set forth herein.

71. Among other things, the BCA Agreement requires Kafka to (i) report to the Funds all hours of Covered Work performed by Kafka employees, (ii) timely make fringe benefit contributions to the Funds, and (iii) remit all unremitted and/or undeducted checkoffs and PAC contributions deducted from the wages paid to employees who perform Covered Work and authorize such deductions in writing.

72. During the Audit Period, Kafka breached its obligations under the BCA Agreement to report all hours of Covered Work, to make required fringe benefit contributions, and to remit all unremitted and/or undeducted dues checkoffs and PAC contributions to the

14

Funds. Moreover, because Kafka has not paid the Funds all of the delinquent fringe benefit contributions from the Audit Period or remitted to the Funds all of the delinquent dues checkoffs and PAC contributions from the Audit Period, Kafka continues to breach the BCA Agreement.

73. Upon information and belief, Kafka continues to perform Covered Work under the BCA Agreement.

74. Kafka's prior and current conduct in failing to make the required payments under the BCA Agreement demonstrates a strong likelihood that Kafka will continue such violations of the BCA Agreement in the future.

75. In the absence of injunctive relief, the Funds and the Union have no adequate remedy at law to ensure that Kafka will abide by the terms of the BCA Agreement now and in the future.

76. The Funds and the Union will suffer immediate and irreparable injury unless the Court issues an injunction that requires Kafka, now and for as long as it remains bound by the BCA Agreement, to: (i) report to the Funds all hours of Covered Work performed by Kafka employees; (ii) make all required fringe benefits contributions to the Funds; (iii) deduct and remit all required dues checkoffs and PAC contributions for employees who perform Covered Work and authorize such deductions in writing; (iv) post a bond of at least $1,125,621.86 to guarantee payment of all fringe benefit contributions to the Funds and remittance of all unremitted and/or undeducted dues checkoffs and PAC contributions; and (v) cooperate with an audit of its books and records for the period of March 26, 2016 through the present.

**TENTH CAUSE OF ACTION**
**(CLAIM FOR INJUNCTIVE RELIEF**
**AGAINST KAFKA UNDER ERISA)**

77. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 76 of this Complaint, as if fully set forth herein.

78. The BCA Agreement requires Kafka to timely make fringe benefit contributions to the Funds.

79. During the Audit Period, Kafka breached its obligations under the BCA Agreement to make required fringe benefit contributions. Moreover, Kafka continues to violate the BCA Agreement because it has not yet paid the Funds the full amount of delinquent fringe benefit contributions from the Audit Period.

80. Kafka's breach of its obligation to make fringe benefit payments under the BCA Agreement is also a breach of Kafka's statutory obligations under ERISA.

81. Upon information and belief, Kafka continues to breach its obligation to make fringe benefits payments under the BCA Agreement and thus, its statutory obligations under ERISA.

82. Kafka's prior and current conduct in failing to make required payments under the BCA Agreement, in violation of its ERISA obligations, demonstrates a strong likelihood that Kafka will continue to breach its ERISA obligations in the future. The Funds have no adequate remedy at law to ensure that Kafka will abide by its ERISA obligations.

83. The Funds will suffer immediate and irreparable injury unless the Court issues an injunction that requires Kafka, now and for as long as it remains obligated to do so by ERISA, to make all required fringe benefit contributions to the Funds.

84.  Accordingly, the Funds request that this Court issue a permanent injunction that requires Kafka, now and for as long as Kafka remains obligated to do so by ERISA, to make all required fringe benefit contributions to the Funds.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Kafka:

A. for payment of delinquent fringe benefit contributions in the amount of $562,810.93 for the Audit Period;

B. for payment of all delinquent dues checkoffs and PAC contributions from wages in the amount of $42,648.84 for the Audit Period;

C. requiring Kafka to cooperate with an Audit of its books and records for the period of March 26, 2016 through the present;

D. for payment of all delinquent fringe benefit contributions pursuant to an audit of Kafka's books and records for the period of March 26, 2016 through the present;

E. for payment of all delinquent dues checkoffs and PAC contributions from wages in the amount found due and owing pursuant to an audit of Kafka's books and records for the period of March 26, 2016 through the present;

F. for interest on all delinquent and late paid fringe benefit contributions owed during the Audit Period from the time such contributions were due and at the rate set by the BCA Agreement;

G. for interest on all delinquent fringe benefit contributions found due and owing pursuant to an audit of Kafka's books and records for the period of

March 26, 2016 through the present, from the time such contributions were due and at the rate set by the BCA Agreement;

H. for liquidated damages in the amount equal to the interest on the delinquent fringe benefit contributions owed during the Audit Period;

I. for interest on all unpaid and late paid dues checkoffs and PAC contributions owed during the Audit Period, at the rate set by CPLR § 5004;

J. for interest on all unpaid dues checkoffs and PAC contributions found due and owing pursuant to an audit of Kafka's books and records for the period of March 26, 2016 through the present, at the rate set by CPLR § 5004;

K. for Plaintiffs' reasonable costs and attorneys' fees;

L. for payment of the imputed cost of the Audit in the amount of $48,776.95;

M. for an Order that requires Kafka to post and maintain a bond of at least $1,125,621.86 to guarantee payment of all fringe benefit contributions to the Funds;

N. for a permanent injunction that requires Kafka, now and for as long as Kafka remains bound by the BCA Agreement, to (i) report to the Funds all hours of Covered Work performed by Kafka employees, (ii) make all required fringe benefits contributions to the Funds, (iii) deduct and remit all required dues checkoffs and PAC contributions for employees who perform Covered Work and authorize such deductions in writing; (iv) post

      a bond of at least $1,125,621.86 to guarantee payment of all fringe benefit contributions to the Funds; and (v) cooperate with an audit of its books and records for the period of March 26, 2016 through the present;

O.     for a permanent injunction that requires Kafka, now and for as long as Kafka remains obligated to do so by ERISA and the BCA Agreement, to make all required fringe benefit contributions to the Funds; and

P.     for such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 22, 2016

                              GORLICK, KRAVITZ
                              &amp; LISTHAUS, P.C.
                              Attorneys for Plaintiffs

By: _____
Bruce L. Listhaus (BL2381)
blisthaus@gkllaw.com
Brett D. Sherman (BS4917)
bsherman@gkllaw.com
17 State Street, 4th Floor
New York, New York 10004
Tel. (212) 269-2500
Fax. (212) 269-2540