UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MASON TENDERS DISTRICT COUNCIL WELFARE
FUND, PENSION FUND, ANNUITY FUND, TRAINING
FUND, HEALTH AND SAFETY FUND, and DOMINICK
GIAMMONA, as FUNDS'CONTRIBUTIONS/DEFICIENCY
MANAGER,

**Docket No. 16 Civ. 09911 (KPF)**

           Plaintiffs,

  -against-

KAFKA CONSTRUCTION, INC.,

           Defendant.
-------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

**MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP**
By: Richard M. Howard, Esq.
*Attorneys for Defendant*
190 Willis Avenue
Mineola, NY 11501
(516) 747-0300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MASON TENDERS DISTRICT COUNCIL WELFARE
FUND, PENSION FUND, ANNUITY FUND, TRAINING
FUND, HEALTH AND SAFETY FUND, and DOMINICK
GIAMMONA, as FUNDS' CONTRIBUTIONS/DEFICIENCY
MANAGER,

Docket No. 16 Civ. 09911 (KPF)

             Plaintiffs,

    -against-

KAFKA CONSTRUCTION, INC.,

             Defendant.
-------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

  Defendant does not dispute Plaintiff's entitlement to the principal amount sought for delinquent contributions. Defendant has admitted same and accepts same. Defendant does dispute: (a) the interest rate used by Plaintiffs for delinquent contributions to the non-ERISA qualified funds, [as said claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") and federal common law would apply an interest rate almost 8% less than sought by Plaintiffs]; and (b) paying the imputed audit cost sought by Plaintiffs, rather than the actual audit cost [as the imputed audit cost is a failed attempt at liquidated damages].

  Plaintiffs use the 9% interest rate of CPLR § 5004 for the non-ERISA fund delinquencies. Defendant asserts: (a) the claim is pre-empted by LMRA § 301, Cummings v. City of New York, 209 LRRM (BNA) 3677 [SDNY Sept. 29, 2017]; and (b) if it is to be determined herein, then the one year treasury bill rate should be used, Profi-Parkiet Sp. Zoo v.

818900-1                1

Seneca Hardwoods LLC, 2014 WL 2169769, at *10 [EDNY 2014], report and recommendation adopted, 2014 WL 2765793 [EDNY 2014].

Further, Plaintiff seeks over Thirty-Two Thousand Dollars ($32,000.00) for imputed audit costs. Actual costs are known and therefore liquidated damages/imputed costs may not be employed. That is the damage to the Fund and that should be the remedy, as said the attorneys for these very same funds in Mason Tenders District Council Welfare Fund, et al. v. Envirowaste and Transcontractors, Inc., Ewt Contracting, Inc., Ewt, 1:98-cv-04040 (S.D.N.Y. 1998). See, 1999 WL 34747832 (S.D.N.Y. 1999).

## STATEMENT OF FACTS

No factual dispute exists between the parties hereto. The facts are accurately set forth in the Moving Declaration of Joy K. Mele and the statements of fact contained therein are respectfully incorporated herein by reference thereto.

## POINT I

## THE DAMAGES SOUGHT FOR AUDIT COSTS BEAR NO RELATION TO THE ACTUAL AUDIT COSTS AND THEREFORE SHOULD NOT BE ACCEPTED

Here, Plaintiffs seek "imputed audit costs," essentially liquidated damages rather than the actual cost to the funds for conducting the audit. It is not difficult to calculate the actual audit costs, it would be contained in an invoice or invoices from the auditors to the Funds. More importantly, such "imputed" costs/liquidated damages bear no relation to the actual costs. It is not based upon the cost of the audit, but the amount of the delinquency, clearly a penalty for a larger delinquency, not a remedy of repayment of the cost of the audit.

It is well settled that damages awarded must bear a relation to the actual harm. As stated in Fischer v. OBG Cameron Banfill LLP, 08 CIV. 7707 RJH KNF, 2010 WL 3341812,

at *5 [SDNY Aug. 24, 2010], report and recommendation adopted in part, rejected in part, 08 CIV. 7707 RJH KNF, 2010 WL 3733882 [SDNY Sept. 24, 2010]:

> *See, e.g., Paris v. New York Times Co.,* 170 Misc. 215, 221, 9 N.Y.S.2d 689, 695 (New York Sup.Ct.1939) ("[w]hile damages need not be proved with mathematical exactness, the effect must bear a reasonable relation to the wrong. The evidence must satisfactorily link the two.

The above is all the more correct in the area of liquidated damages, where the Court in Penn Intermodal Leasing, Inc. v. Shipping Corp. of India, 95 CIV. 10178 (SWK), 1997 WL 431087, at *7 [SDNY 1997], stated:

> However, as discussed above, a liquidated damages clause will only be ruled invalid as a matter of law when the amount of damages specified bears no reasonable relation to the actual or anticipated damages. *PacifiCorp Capital, Inc. v. Tano, Inc.,* 877 F.Supp. at 183–84. Moreover, New York courts are especially inclined to favor liquidated damages clauses when the anticipated loss is difficult to predict

Here, the loss is not difficult to predict, it is precisely the amount incurred by the Funds to conduct the audit. They are billed for it, they pay it and they should be reimbursed in full, including interest, but a penalty serves no valid purpose, Seven Corners Shopping Ctr. Falls Church v. Chesapeake Enterprises USA LLC, 2009 WL 700868, at *7 [WDNY 2009], decision clarified sub nom. Seven Corners Shopping Ctr. Falls Church, VA. Ltd. Partnership v. Chesapeake Enterprises USA LLC, 2009 WL 2180829 [WDNY 2009], stating:

> To recover liquidated damages in the event of a breach, the New York Court of Appeals has held that the amount must bear a reasonable relation to the probable loss, and the amount of actual loss must be incapable or difficult of precise estimation. *See Truck Rent–A–Center v. Puritan Farms 2nd, Inc.,* 41 N.Y.2d 420, 425, 393 N.Y.S.2d 365, 361 N.E.2d 1015 (1977) ("A liquidated damage provision has its basis in the principle of just compensation for loss");[11] *JMD Holding Corp.,* 4 N.Y.3d 373, 380, 795 N.Y.S.2d 502, 828 N.E.2d 604 (2005) (Court of Appeals reiterated criteria for determining whether liquidated damages clause is an unenforceable penalty);[12] *see also Fingerlakes Chiropractic, P.C. v. Maggio,* 269 A.D.2d 790, 703 N.Y.S.2d 632 (4th Dept.2000); *Pyramid Centres & Co. v. Kinney Shoe Corp.,* 244 A.D.2d 625,

818900-1                                   3

663 N.Y.S.2d 711 (3d Dept.1997); *City of Rochester v. E & L Piping, Inc.* 196 Misc.2d 572, 575, 764 N.Y.S.2d 514 (Rochester Sup.Ct.2003).

Further, as stated in a memorandum of law submitted by counsel on behalf of these very funds in Mason Tenders District Council Welfare Fund, et al v. Envirowaste and Transcontractors, Inc., Ewt Contracting, Inc., Ewt., *supra*:

> Thus, the Court should award plaintiff the lesser of the imputed cost of auditing or the actual audit costs. According to the CBA, the imputed cost of the audit is equal to the total audited deficiency divided by 150 multiplied by the number of months audited. Here, the imputed cost of auditing is $14,547.43 and the actual cost is $9,110.84 (Rush Aff. ¶ 4). Therefore, the Court should award plaintiff $9,110.84 in audit costs incurred in connection with the prior audits, plus any audit costs that will be incurred in connection with the period February 22, 1998 to the date of the Stipulation.

It is therefore respectfully submitted that the audit costs to be recovered by the Plaintiffs should be the actual audit costs paid.[1]

## POINT II

### THE DAMAGE CLAIMS OF THE NON-ERISA FUNDS HEREIN ARE PREEMPTED BY LMRA AND THEREFORE INTEREST RATES PROVIDED BY STATE STATUTES ARE IRRELEVANT AND FEDERAL COMMON LAW SHOULD DICTATE THE APPROPRIATE RATE OF INTEREST

Plaintiffs assert a failure to make contributions to certain non-ERISA qualified funds. While Plaintiffs have categorized same as common law breach of contract, the claims are for the violation of the collective bargaining agreement and are therefore preempted by LMRA, Silverman v. Miranda, 116 F Supp. 3d 289, 307–08 [SDNY 2015], accord Cummings v. City of New York, 209 LRRM (BNA) 3677 [SDNY Sept. 29, 2017].

In Silverman, the Court stated:

---

[1] It should be noted that the fact that Defendant agreed in the Collective Bargaining Agreement to pay the "imputed cost" is irrelevant to whether the "imputed cost" should be awarded. In every question of liquidated damages, the parties have agreed to same.

818900-1                                        4

While Plaintiffs did not abandon or waive their breach of contract claims, they must nonetheless be dismissed as being preempted by the LMRA. LMRA Section 301 provides, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The Supreme Court has held that this provision completely preempts "any state cause of action" for such violations, *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (citing *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968)), because Section 301 requires that "the relationships created by [a collective-bargaining] agreement be defined by application of an evolving federal common law grounded in national labor policy." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (internal quotations and citations omitted). The Supreme Court has described various situations where claims are preempted by Section 301:

> claims that are 'founded directly on the rights created by collective-bargaining agreements,' *Caterpillar* [*Inc. v. Williams*], 482 U.S. [386,] 395, 107 S.Ct. 2425 [96 L.Ed.2d 318 (1987) ]; claims that 'require [ ] the interpretation of a collective-bargaining agreement.' *Lingle* [*v. Norge Div. of Magic Chef, Inc.*], 486 U.S. [399,] 412, 108 S.Ct. 1877 [100 L.Ed.2d 410 (1988) ]; claims that are 'substantially dependent on analysis of a collective-bargaining agreement,' *Int'l Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); claims that are 'inextricably intertwined with consideration of the terms of the labor contract,' *Allis–Chalmers Corp.,* 471 U.S. at 213, 105 S.Ct. 1904; and claims that assert rights 'derive[d] from the contract,' *id.* [at 217, 105 S.Ct. 1904].
> *Williams v. Comcast Cablevision of New Haven, Inc.,* 322 F.Supp.2d 177, 182 (D.Conn.2004).

The <u>Silverman</u> Court then applied preemption to just the type of non-ERISA qualified fund contribution collection action as here and found it preempted, stating:

> Plaintiffs' claim is ultimately one for breach of the CBAs by the Local 210 Fund for failure to remit funds to the UMMF. This is exactly the type of claim Section 301 is meant to preempt—the rights allegedly violated derive solely from the CBA, not any independent source of state law, and, because the cause of action is for the breach of the CBAs, Plaintiffs' claim for breach of contract requires interpretation, not mere consultation, of the CBAs. *See Lingle,* 486 U.S. at 410 n. 10, 108 S.Ct. 1877 ("Section 301 governs claims founded directly

on the rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of collective-bargaining agreements.' ") (quoting *Caterpillar*, 482 U.S. at 394–95, 107 S.Ct. 2425); *see also Livadas*, 512 U.S. at 121–22, 114 S.Ct. 2068 ("we have read the text of § 301 not only to grant federal courts jurisdiction over claims asserting breach of collective-bargaining agreements but also to authorize the development of federal common-law rules of decision"); *Intl. Broth. of Elec. Workers*, 481 U.S. at 857, 107 S.Ct. 2161 ("The ordinary § 301 case is a contract claim in which a party to the collective-bargaining agreement expressly asserts that a provision of the agreement has been violated.") (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)); *Sadowski v. Tech. Career Insts., Inc.*, 162 F.3d 1148, at *1 (2d Cir.1998)

As Plaintiffs' contract claim is premised upon a breach of the collective bargaining agreement, it is preempted by LMRA, <u>Cummings v. City of New York</u>, *supra*, wherein the Court stated:

> Any contract claim based on a breach of the CBA would also be preempted by the LMRA.[17] "Section 301 [of the LMRA] governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is pre-empted and federal labor-law principles ... must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). A claim for breach of a CBA falls squarely within the ambit of Section 301.

As the claim for non-ERISA qualified fund contributions is preempted by ERISA, federal common law should apply, <u>Chemung Canal Tr. Co. v. Sovran Bank/Maryland</u>, 939 F2d 12, 16 [2d Cir 1991] ("The Supreme Court has left no doubt that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.' " *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)").

Federal common law does not apply a nine percent (9%) rate of interest, but instead the average interest over one year on a treasury bill, <u>Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC</u>, 2014 WL 2169769, at *10 [EDNY 2014], <u>report and recommendation adopted,</u> 2014 WL 2765793 [EDNY 2014], stating:

> "While New York law provides for a 9 percent annual rate of interest, *see* N.Y.C.P.L.R. § 5004, when a judgment is based on violations of both federal and state law, courts in this circuit uniformly have applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills [ ] for ... the relevant time period between the time plaintiff's claims arose ... until the entry of judgment." *Liberty Media Corp., LMC v. Vivendi Universal, S.A.,* No. 03 Civ. 2175, 2013 WL 105776, at *4 (S.D.N.Y. Jan. 9, 2013). Accordingly, plaintiff is entitled to recover prejudgment interest on its damages of $52,537.07, starting from February 2012, when plaintiff received the non-conforming goods, using the average rate of return on one-year Treasury bills, compounded annually.

The one year average, per Bankrate.com is currently approximately 1.64% and one year ago was 0.80%. Consequently, rather than the 9% interest rate sought by Plaintiffs, it is respectfully submitted that a rate of 1.2% would be appropriate.

## CONCLUSION

Plaintiffs' use of liquidated damages/imputed audit costs runs afoul of longstanding case law, as the actual costs are readily susceptible to calculation and the imputed costs bear no relation to same.

Plaintiff's use of a 9% interest rate for non-ERISA qualified fund contribution delinquencies is impermissible. Such a claim is preempted by LMRA and therefore federal common law should apply and a rate of approximately 1.2% would be more appropriate.

**WHEREFORE**, it is respectfully submitted that Plaintiffs' motion for summary judgment should be denied: (a) as to the interest rate used vis-à-vis non-ERISA qualified fund

818900-1          7

contribution delinquencies; and (b) as to the use of imputed audit costs, and the Defendant should be afforded such other and further relief as this Court deems just and proper.

Dated: Mineola, New York
      December 11, 2017

                                Respectfully submitted,
                                MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP

                                _____
                                Richard M. Howard
                                *Attorneys for Defendant*
                                190 Willis Avenue
                                Mineola, New York
                                (516) 747-0300