USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 8, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
MASON TENDERS DISTRICT COUNCIL                          :
WELFARE FUND, PENSION FUND,                             :
ANNUITY FUND, TRAINING FUND, HEALTH                     :   16 Civ. 9911 (KPF)
AND SAFETY FUND; and DOMINICK                           :
GIAMMONA, *as funds'*                                   :   OPINION AND ORDER
*Contributions/Deficiency Manager*,                     :
                                                        :
                                        Plaintiffs,     :
                                                        :
                        v.                              :
                                                        :
KAFKA CONSTRUCTION, INC,                                :
                                                        :
                                        Defendant.      :
                                                        :
------------------------------------------------------- X

KATHERINE POLK FAILLA, District Judge:

The plaintiffs in this action consist of jointly administered, multi-employer, labor management trust funds (the "Funds") established and maintained under various collective bargaining agreements in accordance with Sections 302(c)(5) and (c)(6) of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. §§ 186(c)(5), (c)(6), as well as the Manager of the Funds' Contributions and Deficiency Department, Dominick Giammona (along with the Funds, "Plaintiffs") in his fiduciary capacity pursuant to Sections 3(21) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), 29 U.S.C. §§ 1002(21), 1132(a)(3). The Funds are also employee benefit funds within the meaning of Sections 3(1), 3(2), and 3(3) of ERISA, 29 U.S.C. §§ 1002(1)-(3).

Plaintiffs sued Kafka Construction, Inc. ("Kafka") after it failed to remit fringe benefits, dues checkoffs, and Political Action Committee ("PAC") contributions to the Funds pursuant to a collective bargaining agreement. Before the Court is Plaintiffs' motion for summary judgment. For the reasons below, the Court grants the motion.

## BACKGROUND[1]

**A. Factual Background**

**1. Kafka's Obligations Under the Collective Bargaining Agreement**

The relevant facts are undisputed. (*See* Def. Opp. 2). Collective bargaining agreements between the Mason Tenders District Council of Greater New York (the "Union") and employers of the Union's members require the employers to contribute to the Funds in order to provide fringe benefits to eligible employees. (Pl. 56.1 ¶ 5). The Funds are thus third-party beneficiaries of the collective bargaining agreements, and one of the Funds, the Mason Tenders District Council Welfare Fund, is the authorized collection agent for remittances to the Union and the Mason Tenders District Council Political Action Committee. (*Id.* at ¶¶ 6-7).

---

[1] This Opinion draws facts from Plaintiffs' Statement Pursuant to Local Rule 56.1 (Dkt. #48 ("Pl. 56.1")), the Declaration of Joy K. Mele in Support of Plaintiffs' Motion for Summary Judgment (Dkt. #49 ("Mele Decl.")), the Declaration of David Bolger in Support of Plaintiffs' Motion for Summary Judgment (Dkt. #50 ("Bolger Decl.")), the Declaration of Dominick Giammona in Support of Plaintiffs' Motion for Summary Judgment (Dkt. #51 ("Giammona Decl.")) and the exhibits attached to those declarations. In addition, the Court shall refer to Plaintiffs' Memorandum of Law in Support of Summary Judgment (Dkt. #47) as "Pl. Br.," Defendant's Memorandum of Law in Opposition to Summary Judgment (Dkt. #54) as "Def. Opp.," and Plaintiffs' Reply to Defendant's Opposition (Dkt. #55) as "Pl. Reply."

2

The Union entered a collective bargaining agreement (the "CBA") with the Building Contractors Association (the "BCA"), which was effective from July 1, 2010, to June 30, 2014, and was extended by a separate memorandum of understanding from July 1, 2014, to June 30, 2018. (Pl. 56.1 ¶ 10). As a member of the BCA, Kafka was required "to make fringe benefit contributions to the Funds for every hour of work performed by its employees within the trade and geographic jurisdiction of the" CBA. (*Id.* at ¶¶ 11-13). In addition, Kafka was obligated "to deduct and remit [principal] dues checkoffs and PAC contributions from the wages of all authorized employees" within the trade and geographic jurisdiction of the CBA. (*Id.* at ¶ 14).

 2. **The Funds' Audit of Kafka's Books and Records, and Kafka's Stipulation to Amounts Owed**

A provision of the CBA entitles the Funds to audit the books and records of employers to ensure that all contributions are paid in full. (Pl. 56.1 ¶¶ 15-16). Pursuant to this provision, the Funds audited Kafka's books and records for the period of March 28, 2015, to March 25, 2016, and found "that Kafka failed to pay $562,810.93 in principal fringe benefit contributions and failed to remit $42,648.84 in principal dues checkoffs and PAC contributions for 20,146.6 hours" of work that required such contributions. (*Id.* at ¶ 17). After bringing this action, the Funds revised the audits on March 17, 2017, and again on August 23, 2017; the most recent revised audit (the "Second Revised Audit") "found that Kafka owed $449,162.18 in principal fringe benefit contributions and $34,167.39 in principal dues checkoffs and PAC contributions." (*Id.* at ¶¶ 18-19).

Kafka has stipulated that it accepts the findings of the Second Revised Audit and owes a total of $483,329.57 to the Funds, consisting of principal fringe benefit contributions, dues checkoffs, and PAC contributions for the period March 28, 2015, through March 25, 2016. (Mele Decl., Ex. 1, at ¶¶ 6-8). But Kafka reserved its right to contest any portion of a judgment obtained by the Funds in excess of that amount. (*Id.* at ¶ 8). Kafka also agreed, however, to cooperate with any audit conducted by the Funds "for any time period following the Second Revised [A]udit period" and that the Funds could recover additional damages for unpaid contributions pursuant to the findings of such audit. (*Id.* at ¶ 10). In exchange, Plaintiffs forewent a deposition of a corporate representative for Kafka. (*Id.* at ¶ 11).

### 3. The Fund Credits a Post-Audit Payment Toward Kafka's Outstanding Dues

Following the Second Revised Audit, on November 1, 2017, the Funds received a payment from the New York City School Construction Authority in the amount of $27,798.40 for 1,165 hours of work performed by Kafka from April 3, 2015, through May 20, 2016. (Pl. 56.1 ¶¶ 28-29). This work period includes 144 hours of work by Kafka for the week ending April 1, 2016, through the week ending May 20, 2016, which is outside of the period of time relevant to the Second Revised Audit. (*Id.* at ¶ 30). The Funds credited the remainder of the payment ($23,318.56) toward the amount of Kafka's deficiency, which reduces such amount to $460,011.01, consisting of $427,453.74 in principal fringe benefits and $32,557.27 in principal dues checkoffs and PAC contributions. (*Id.* at ¶¶ 31-33).

## B. Procedural Background

Plaintiffs filed the complaint in this action on December 23, 2016 (Dkt. #1 ("Complaint" or "Compl.")), and Kafka filed its answer on February 24, 2017 (Dkt. #17). The Complaint includes claims for breach of contract; ERISA violations; remedies provided by the CBA, including attorneys' fees and costs; injunctive relief; and an order directing Kafka to comply with an audit of its books and records for the period after March 25, 2016. (*See* Compl. ¶¶ 17-84).

The parties entered into the stipulation discussed above after completing discovery on September 25, 2017. (Dkt. #44). On November 3, 2017, Plaintiffs moved for summary judgment to recover the amounts owed along with interest calculated under New York law, liquidated damages equal to the amount of interest on the unpaid contributions, attorneys' fees and costs, and the imputed costs of the Second Revised Audit. (*See* Dkt. #46-51). Kafka filed a partial opposition to the motion on December 11, 2017 (Dkt. #54), and Plaintiffs replied to the opposition on December 22, 2017 (Dkt. #55).

## DISCUSSION

## A. Summary Judgment under Fed. R. Civ. P. 56

Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the

5

nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Catrett*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Estate Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). In considering "what may reasonably be inferred" from witness testimony, however, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (quoting *Cty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d

6

1295, 1318 (2d Cir. 1990)). Moreover, "[t]hough [the Court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996) (internal citation omitted) (citing *Matsushita,* 475 U.S. at 587; *Wyler* v. *United States,* 725 F.2d 156, 160 (2d Cir. 1983)); *accord Hicks* v. *Baines,* 593 F.3d 159, 166 (2d Cir. 2010).

**B.     Plaintiffs Are Entitled to Summary Judgment**

In light of its September 25, 2017 Stipulation, Kafka only opposes two portions of Plaintiffs' motion for summary judgment: (i) the interest rate applicable to the principal dues checkoffs and PAC contributions owed by Kafka; and (ii) Plaintiffs' entitlement to the imputed, rather than actual, cost of the Second Revised Audit. (*See* Def. Opp. 1). As the Court explains below, Kafka's arguments fail.

> **1.     Kafka Has Admitted Liability for Unremitted Principal Fringe Benefit Contributions, Unremitted Dues Checkoffs, Unremitted PAC Contributions, Interest on Unpaid Principal Fringe Benefit Contributions, Liquidated Damages, and Attorneys' Fees**

The CBA required Kafka to deduct fringe benefits, dues checkoffs, and PAC contributions from wages paid to its employees. *See also* 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."). Kafka has stipulated to the unremitted amounts in each of

7

these categories, and Plaintiffs have properly reduced such amounts in light of the payment received from the New York City School Construction Authority. Kafka is thus liable for unremitted payments under the CBA amounting to $460,011.01, which consists of $427,453.74 in principal fringe benefits and $32,557.27 in principal dues checkoffs and PAC contributions. (Pl. 56.1 ¶¶ 31-33).

Both the CBA and ERISA entitle Plaintiffs to collect interest on the unremitted fringe benefit contributions, and Kafka does not challenge this. (*See* Mele Decl. ¶ 12; Bolger Decl., Ex. 2, at 33-34). *See* 29 U.S.C. § 1132(g)(2)(B). Those same provisions require such interest to be calculated pursuant to 26 U.S.C. § 6621, which Plaintiffs properly applied to arrive at interest on the $427,453.74 in unpaid principal fringe benefits in the amount of $32,916.26 for the period of May 15, 2015, through November 1, 2017. (*See* Mele Decl. ¶ 13). Plaintiffs are thus entitled to this amount of interest.

The CBA and ERISA also entitle Plaintiffs to liquidated damages equal to the interest on the unremitted fringe benefit contributions. (*See* Mele Decl. ¶ 14; Bolger Decl., Ex. 2, at 33-34). *See* 29 U.S.C. § 1132(g)(2)(C). Plaintiffs are thus entitled to liquidated damages in the amount of $32,916.26.

Finally, the CBA and ERISA entitle Plaintiffs to reasonable attorneys' fees. (*See* Mele Decl. ¶ 18; Bolger Decl., Ex. 2, at 33-34). *See* 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have not yet submitted an accounting of their fees and costs, and the Court thus grants Plaintiffs' request to do so after the resolution of the instant summary judgment motion.

### 2. Kafka's Unpaid Dues Checkoffs and PAC Contributions Are Subject to New York's 9% Interest Rate

Plaintiffs contend that the Funds are entitled to recover prejudgment interest beginning from May 7, 2015, on the outstanding principal unpaid dues checkoffs and PAC contributions, which outstanding payments amount to $32,557.27, at an annual 9% rate pursuant to New York law. (*See* Pl. Br. 8, 10 (citing N.Y. C.P.L.R. §§ 5001 (allowing recovery of interest on award for breach of contract), 5004 (setting interest rate at annual 9% "except where otherwise provided by statute")). In opposition, Kafka contends that Plaintiffs' claim is for breach of a collective bargaining agreement, is therefore preempted by the LMRA, and that instead of New York's 9% interest rate, an award for the claim should be subject to "the average interest over one year on a treasury bill" under federal law. (Def. Opp. 4-7). *See* 28 U.S.C. § 1961(a) (establishing interest "on any money judgment in a civil case recovered in a district court" "at a rate equal to the weekly average 1-year constant maturity Treasury yield").[2]

Section 301 of the LMRA bestows federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees[.]" 29 U.S.C. § 185(a). The Supreme Court has understood this section "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 209

---

[2] According to Kafka, such "one year average, per Bankrate.com is currently approximately 1.64% and one year ago was 0.80%." (Def. Opp. 7).

(1985). Section 301 "completely preempts 'any state cause of action'" for violations of labor contracts. *Silverman* v. *Miranda*, 116 F. Supp. 3d 289, 306 (S.D.N.Y. 2015) (quoting *Franchise Tax Bd. of State of Cal.* v. *Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983)). Thus, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Lueck*, 471 U.S. at 220 (internal citation omitted).

As mentioned above, Kafka contends that Plaintiffs' contract claims are preempted, but does not seek dismissal on that basis. *See also, e.g., Silverman*, 116 F. Supp. 3d at 310 (rejecting argument that Court was precluded from construing LMRA-preempted claims as § 301 claims). Whether the Court were to award damages to Plaintiffs under § 301 or common law breach of contract principles, however, it would apply New York's 9% annual interest rate.

With respect to awards under § 301, "[b]ecause the LMRA is silent with respect to a prejudgment interest rate, the 'common practice' among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." *Serv. Employees Int'l Union, Local 32BJ, AFL-CIO* v. *Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (citation omitted); *accord N.Y.C. Dist. Council of Carpenters* v. *Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *4 (S.D.N.Y. July 20, 2012); *Mason Tenders Dist. Council of Greater N.Y.* v. *G & C*

10

*Constr. Safe, Inc.*, No. 10 Civ. 3399 (JGK) (MHD), 2011 WL 744918, at *8 (S.D.N.Y. Feb. 8, 2011), *report and recommendation adopted Mason Tenders Dist. Council of Greater N.Y.* v. *G & C Constr. Safe, Inc.*, No. 10 Civ. 3399 (JGK), 2011 WL 744914 (S.D.N.Y. Mar. 2, 2011).

Similarly, courts awarding interest on unremitted dues checkoffs and PAC contributions without reliance on § 301 of the LMRA have awarded interest under New York's 9% annual rate. *See, e.g., Virga* v. *Big Apple Constr. & Restoration Inc.*, 590 F. Supp. 2d 467, 473 (S.D.N.Y. 2008), *on reconsideration in part* (May 12, 2008); *Trustees of Mason Tenders Dist. Council* v. *Multi Recycling Corp.*, No. 04 Civ. 3051 (DLC), 2005 WL 3446042, at *5 (S.D.N.Y. Dec. 15, 2005); *Mason Tenders Dist. Welfare Fund* v. *Santa Fe Constr., Inc.*, No. 03 Civ. 5882 (RCC), 2005 WL 486700, at *2 (S.D.N.Y. Mar. 2, 2005); *Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Training Program Fund* v. *Ciro Randazzo Builders, Inc.*, No. 03 Civ. 2677 (RMB) (JCF), 2004 WL 1152933, at *2-3 (S.D.N.Y. May 24, 2004), *report and recommendation adopted sub nom. Mason Tenders Dist. Council Welfare Fund* v. *Ciro Randazzo Builders, Inc.*, No. 03 Civ. 2677 (RMB) (JCF), 2004 WL 1462220 (S.D.N.Y. June 28, 2004); *Bricklayers Dist. Council Welfare Fund* v. *Capri Constr. Corp.*, No. 93 Civ. 2904 (SS), 1995 WL 72403, at *4 (S.D.N.Y. Feb. 10, 1995). Tellingly, Kafka cites to no case applying the federal interest rate based on the weekly average one-year constant maturity treasury yield to cases under the LMRA or, more generally, cases seeking unremitted dues checkoffs and PAC contributions. And the Court's independent research has revealed none.

Given the foregoing, Plaintiffs are entitled to prejudgment interest on the outstanding principal unpaid dues checkoffs and PAC contributions, amounting to $32,557.27, at an annual 9% rate pursuant to New York law, calculated from May 7, 2015.

### 3. Plaintiffs Are Entitled to the Imputed Costs of the Second Revised Audit

Plaintiffs seek the imputed costs of the Second Revised Audit pursuant to the terms of the CBA, which provide as follows:

> If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement, the Employer shall bear the imputed cost of the audit as set forth below:

$$\frac{\text{total audited deficiency}}{150} \times \text{number of months audited} = \text{imputed cost of audit}$$

(Pl. 56.1 ¶ 42). The CBA also defines "substantially delinquent" as "any delinquency in the payment of fringe benefit contributions to the [Funds] … in excess of 10% of the fringe benefit contributions paid to the [Funds] … during the period that is subject to the audit." (*Id.*; *see also id.* at ¶ 45). During the period examined under the Second Revised Audit, Kafka paid $1,003,293.10 in fringe benefits; its deficiency of $427,453.74 thus far exceeds 10% of the total contributions that Kafka paid during that period, rendering its deficiency "substantially delinquent" under the terms of the CBA. (*See id.* at ¶¶ 46-48).

Kafka seeks to avoid paying the imputed cost of the Second Revised Audit as calculated pursuant to the CBA's formula, arguing that the "imputed audit costs" so defined are "essentially liquidated damages" amounting to "a

12

penalty for a larger delinquency, not a remedy of repayment of the cost of the audit." (Def. Opp. 2). In Kafka's view, a more appropriate payment would be "the actual audit costs paid." (*Id.* at 4). But this argument is unavailing.

To categorize the above formula for imputed audit costs as a liquidated damages provision would be misleading, as the CBA provision at issue does not provide a sum certain in the event of breach. *See CIT Grp./Commercial Servs., Inc.* v. *Holladay-Tyler Printing Corp.*, No. 94 Civ. 6642 (HB), 1995 WL 702343, at *1 (S.D.N.Y. Nov. 29, 1995) ("By definition, … the liquidated damages clause must specify a sum certain."); *cf. Reich* v. *S. New England Telecomms. Corp.*, 121 F.3d 58, 71 n.4 (2d Cir. 1997) ("As used in the [Fair Labor Standards Act] 'liquidated damages' is something of a misnomer. It is not a sum certain, determined in advance as a means of liquidating damages that may be incurred in the future." (quoting *Brock* v. *Superior Care, Inc.*, 840 F.2d 1054, 1063 n.3 (2d Cir. 1988)). Kafka's theory that the CBA's provision awarding imputed audit costs constitutes an unenforceable liquidated damages provision thus falls flat.

Moreover, both ERISA and the CBA authorize the Court to award *any* legal or equitable relief it deems appropriate. *See* 29 U.S.C. § 1132(g)(2)(E); *Mason Tenders Dist. Council* v. *Aurash Constr. Corp.*, No. 04 Civ. 2427 (RCC), 2006 WL 647884, at *4 (S.D.N.Y. Mar. 15, 2006).[3] Given such authority,

---

[3] Section 18(f) of the CBA reads as follows:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the Trustees of the Trust Funds … to collect delinquent contributions to such Fund, and if such court renders a judgment in favor of such Fund, the Employer shall pay

13

courts have awarded imputed audit costs as a matter of course. *See, e.g., Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund* v. *Harbor Island Contracting, Inc.*, No. 13 Civ. 6075 (MKB), 2015 WL 1245963, at *6 (E.D.N.Y. Mar. 16, 2015) ("Courts have routinely interpreted [§ 1132(g)(2)(E)] to allow audit costs as part of the damages award." (citing *Ferrara* v. *PJF Trucking LLC,* No. 13 Civ. 7191 (JS) (AKT), 2014 WL 4725484, at *17 (E.D.N.Y. Sept. 22, 2014) (collecting cases))); *Virga*, 590 F. Supp. 2d at 476; *Mason Tenders Dist. Council* v. *Envirowaste & Transcontractors, Inc.*, No. 98 Civ. 4040 (DC), 1999 WL 370667, at *2 (S.D.N.Y. June 7, 1999).

Thus, pursuant to ERISA and the CBA, Plaintiffs are entitled to an award of imputed audit costs in the amount of $38,927.39. (Mele Decl., Ex. 1, at Bates Number 1357).

---

to such Fund, in accordance with the judgment of the Court, *and in lieu of any other liquidated damages, costs, attorney's fees and/or interest*, the following:

(A) [T]he unpaid contributions.

(B) Interest on unpaid contributions determined by using the rate prescribed under section 6621 of Title 26 of the United States Code.

(C) Interest on the unpaid contributions as and for liquidated damages.

(D) [R]easonable attorneys' fees and costs of the action.

(E) [S]uch other legal or equitable relief as the court deems appropriate.

(Bolger Decl., Ex. 2, at 33-34 (emphasis added)).

Although, at first glance, this provision may seem to supersede an award of "costs" such as those associated with an audit, *see, e.g., Mason Tenders Dist. Welfare Fund* v. *Santa Fe Constr., Inc.*, No. 03 Civ. 5882 (RCC), 2005 WL 486700, at *2 (S.D.N.Y. Mar. 2, 2005), courts within this District have awarded imputed audit costs despite such a provision, by construing the award under the catch-all "other legal ... relief" that the provision entitles courts to award, *see Virga* v. *Big Apple Constr. & Restoration Inc.*, 590 F. Supp. 2d 467, 476 (S.D.N.Y. 2008) (collecting cases), *on reconsideration in part* (May 12, 2008).

## CONCLUSION

Given the foregoing, Plaintiffs' motion for summary judgment is GRANTED. The Clerk of Court is directed to terminate the motions at docket entries 46 and 48.

Plaintiffs are hereby ORDERED to submit a proposed judgment, along with contemporaneous time records supporting plaintiffs' award of attorneys' fees, within 30 days of the date of this Opinion and Order.

Kafka is hereby ORDERED to submit to an audit of its books and records for the period subsequent to March 25, 2016, within 90 days of the date of this Opinion and Order.

SO ORDERED.

Dated: May 8, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge